UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRAETORIAN INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> A R BUSINESS GROUP, INC., d/b/a US TIRE & WHEEL; MARSHAUN TATE; S.T., by and through his guardian ad litem, KENNETH TATE; ELISEO QUINTERO, SR.; AIDA QUINTERO; FORD MOTOR COMPANY; BRIDGESTONE AMERICAS, INC., <br><br> Defendants. | No.  2:13-cv-02639-MCE-EFB <br><br> **MEMORANDUM AND ORDER** |

This case concerns two civil actions filed in the Sacramento County Superior Court (the "Underlying Actions").  Those suits seek to hold AR Business Group, Inc. d/b/a US Tire & Wheel ("USTW") liable for deaths and injuries that resulted from a motor vehicle accident.  USTW was insured at the time by the plaintiff in this suit, Praetorian Insurance Co.  Praetorian brought this suit in federal court pursuant to its diversity jurisdiction, seeking declaratory relief that any liability attributed to USTW in the Underlying Actions is not covered by USTW's insurance policy and that Praetorian, therefore, has no duty to defend USTW in those actions.  Furthermore, Praetorian seeks

reimbursement from USTW for all fees and costs it has already incurred in defending USTW in the Underlying Actions. Before the Court now are cross Motions for Summary Judgment. ECF Nos. 46, 48. For the reasons below, Plaintiff's motion is GRANTED, while Defendants' motion is DENIED.[1]

## BACKGROUND[2]

This suit concerns the duties and obligations of Praetorian in relation to two civil actions currently pending against USTW in the Sacramento County Superior Court. Those actions arise out of a very serious rollover accident which occurred on Interstate 5 in Merced County on June 20, 2011. Defendant Marshaun Tate was driving a Ford Explorer with three passengers when the left rear wheel tire's tread separated, causing the Explorer to roll over. Tate's wife, Iczert Tate, and Eliseo Quintero, Jr.—both passengers—suffered fatal injuries from the accident. Tate and his son—the third passenger—suffered non-fatal injuries.

Only days before the accident, USTW had sold and installed four used tires on Tate's Explorer. Tate and his son, through a guardian ad litem, filed one of the Underlying Actions in Sacramento County Superior Court, while Eliseo Quintero Sr. and Aida Quintero filed the other. In those Underlying Actions, the Tates and the Quinteros allege that the tires USTW sold and installed on the Explorer contained manufacturing defects. Furthermore, they allege that the tires were the wrong type for the Explorer, were too old, and were negligently placed on the vehicle. Because of these errors and defects, the Tates and Quinteros seek to hold USTW liable for the injuries and deaths that resulted from the June 20, 2011 accident.

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[2] Unless otherwise noted, the facts in this section are drawn directly, and in some cases verbatim, from the Plaintiff's and Defendants' cross motions for summary judgment.

During the period when USTW installed the tires on Tate's Explorer, it had an insurance policy from Praetorian that covered liability stemming from accidents caused by USTW's auto repair work. The relevant language reads:

> **SECTION II - LIABILITY COVERAGE**
>
> **A.     Coverage**
>
>     **1.     "Garage Operations" -- Other Than Covered "Autos"**
>
>         a.     We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos". We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
>     **2.     "Garage Operations" – Covered "Autos"**
>
>         We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".
>
>         * * *
>
>         We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.

The policy also contained several exclusions, one of which is the subject of this litigation:

///

3

**USED TIRES AND RECAPPED TIRES EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY FORM**

Named Insured:  Chat Auto Sales & US Tire & Wheel
Policy Number:  P0007014946
Endorsement Effective:  04/21/2011
Countersigned By (authorized Representative):   Susan Matlock

BUSINESS AUTO COVERAGE FORM, SECTION II-LIABILITY COVERAGE, Part B. EXCLUSIONS, GARAGE COVERAGE FORM, SECTION II-LIABILITY COVERAGE, Part B. EXCLUSIONS and COMMERCIAL GENERAL LIABILITY FORM, SECTION I-COVERAGES, Part 2. EXCLUSIONS are amended to include the following:

**USED TIRES AND RECAPPED TIRES EXCLUSION:**

"Bodily injury" or "property damage", arising out of a defect in, or failure of, one or more tires which were not new when sold or installed by the "insured" or had been recapped, retreaded or regrooved by the "insured", its agent, employee(s) or independent contractor(s).

ORGINAL SIGNATURE ON FILE

_____          _____
Named Insured's Signature                   Date

This endorsement shall apply to any continuation, reinstatement, renewal or replacement of the above mentioned policy by the Named Insured. (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

DMI CA 85 4-06.

Praetorian alleges that this Exclusion precludes it from covering any liability USTW incurred as a result of the June 20, 2011 accident and from any duty to defend USTW in the Underlying Actions.  Accordingly, Praetorian brought this suit seeking declaratory relief.  Because USTW has since become bankrupt, Praetorian named the

plaintiffs in the Underlying Actions co-defendants in this action as the real parties in interest.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

The disposition of this case turns on (1) the enforceability of the Used Tire Exclusion, and (2) the applicability of that Exclusion to the Underlying Actions.

### A. Enforceability of the Used Tire Exclusion

Under California law, insurance policy exclusions require both "[c]onspicuous placement of exclusionary language" and that "[t]he language itself . . . be plain and clear." Haynes v. Farmers Ins. Exch., 32 Cal. 4th 1198, 1211 (2004) (quoting Jauregui v. Mid-Century Ins. Co., 1 Cal. App. 4th 1544, 1550 (1991)). The insurer holds

the burden of fulfilling these requirements of conspicuousness and clarity. Steven v. Fid. & Cas. Co. of N.Y., 58 Cal. 2d 862, 877 (1962). If that burden is not met, the exclusion is unenforceable. Haynes, 32 Cal. 4th at 1204. Furthermore, "it is well established that 'mere receipt of [an endorsement] . . . does not serve to charge the insured with constructive knowledge of [an] exclusion' it contains." Id. at 1210 (alterations in original) (quoting Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57, 65 (1983)).

USTW originally obtained insurance from Plaintiff in 2010. Joint Statement of Undisputed Material Facts ("JUMF"), ECF No. 47, ¶ 11. The 2010 policy included a Used Tire Exclusion, id., but the parties dispute whether the Exclusion was ever signed by USTW. Furthermore, USTW testifies that had it known about the Exclusion, it would not have purchased the insurance. Defs.' Separate Statement of Undisputed Material Facts, ECF No. 48-2, ¶ 28. This is because about 50% of USTW's tire business consisted of used tire sales. JUMF, ¶ 1.

In 2011, USTW renewed its insurance policy with Plaintiff, and it contained the same Used Tire Exclusion as the 2010 policy. Id. ¶¶ 16–17. Although USTW did not sign the Exclusion itself, it did sign the renewal quote provided by Plaintiff, which stated that the "Used Tire Exclusion will carry forward." Id. ¶¶ 14–16. Furthermore, the Used Tire Exclusion was named in a list of forms within the policy itself. Id. ¶ 17. The Used Tire Exclusion itself was provided on a separate page. See id. ¶ 19. This 2011 policy was in effect at the time USTW installed the tires on Tate's Ford Explorer. See id. ¶¶ 16, 42.

Defendants argue that the Used Tire Exclusion is unenforceable because USTW did not have actual notice of the Exclusion. See Defs.' Mem. of P & A in Supp. of Mot. for Partial Summ. J. ("Defs.' MSJ"), ECF No. 48-1, at 10–12. Plaintiff, however, argues that California law only requires that exclusions be conspicuous and in clear language. Pl.'s Opp'n to Defs.' MSJ, ECF No. 55, at 6. Thus, they contend, any factual dispute over whether USTW had actual knowledge of the Exclusion or ever signed the Exclusion

///

is not material and accordingly does not prevent summary judgment in its favor. See id. at 8–9.

Plaintiff has the better of the argument. While cases contain language stating that an exclusion "is insufficient to bind a party to unusual or unfair language unless it is brought to the attention of the party and explained," Fields v. Blue Shield of Cal., 163 Cal. App. 3d 570, 578 (1985), California law does not require actual notice. Instead, exclusions are analyzed as to whether they are sufficiently conspicuous (i.e., brought to the attention of the party) and sufficiently clear (i.e., explained). See, e.g., Haynes, 32 Cal. 4th at 1206–12 (performing such an analysis).

Here, the Exclusion was both conspicuous and clear. It was contained on its own page and bore the title "USED TIRES AND RECAPPED TIRES EXCLUSION ENDORSEMENT" in all caps, bolded. It also was named in all caps in a boxed, set-apart list of forms. These characteristics render exclusions conspicuous under California law. See Thompson v. Mercury Cas. Co., 84 Cal. App. 4th 90, 97 (2000) (finding limitation on liability not sufficiently conspicuous because "the language . . . is not bolded, italicized, enlarged, underlined, in different font, CAPITALIZED, boxed, set apart, or in any other way distinguished from the rest of the fine print."). Thus, the Used Tire Exclusion was sufficiently conspicuous to be enforceable.

The Exclusion was also sufficiently clear, stating in plain language that "'[b]odily injury' or 'property damage,' arising out of a defect in, or failure of, one or more tires which were not new when sold or installed by the 'insured' or had been recapped, retreaded or regrooved by the 'insured,' its agent, employee(s) or independent contractor(s)" was excluded from coverage. JUMF, ¶ 19. It clearly lays out that the policy provides no coverage for any used tire sold by USTW, spelling out explicitly what kinds of tires it encompasses, i.e., "not new" or otherwise "recapped, retreaded or regrooved." Its title also calls out the exclusion's subject as a "Used Tires and Recapped Tires Exclusion."

///

Though the parties dispute whether USTW ever signed the Exclusion when it was originally included in the 2010 policy, it is undisputed that USTW both received and signed the 2011 policy. The 2011 policy is the subject of this litigation, and its conspicuous inclusion of the Used Tire Exclusion in clear language renders the Exclusion enforceable.

Defendants make an additional argument that the Exclusion is void because it was not sent to California Department of Insurance for approval before using the Exclusion form in its policies. Defs.' Opp'n to Pl.'s Mot. for Summ. J ("Pl.'s MSJ"), ECF No. 54, at 18–20. However, they provide no authority for the proposition that there is a requirement that insurers submit all forms for approval with the California Department of Insurance or that failure to do so renders such forms void. Instead, they cite provisions of the California Insurance Code that place such requirements on advisory organizations, see id. at 19, which are not applicable here.

Accordingly, the Used Tire Exclusion is enforceable, regardless of whether it was ever separately signed or whether USTW had actual knowledge of it. The undisputed material facts show that it was sufficiently conspicuous and clear under California law, and that USTW received a copy of it when the policy was renewed for 2011. Thus, the Court must next determine whether the Used Tire Exclusion applies to the Underlying Actions, and whether the relevant material facts are undisputed such that summary judgment is appropriate.

**B.    Applicability of the Used Tire Exclusion to the Underlying Actions**

Under California law, insurers have a duty to defend any "suit which potentially seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1996). The duty applies even if there is only "a bare 'potential' or 'possibility' of coverage." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993). In analyzing whether an insurance policy creates a duty to defend, courts interpret the terms of the policy by applying the same doctrines used in interpreting ordinary contracts. Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115 (1999) ("While insurance

1 contracts have special features, they are still contracts to which the ordinary rules of
2 contractual interpretation apply."). Thus, "[w]hen interpreting a policy provision, [courts]
3 give its words their ordinary and popular sense except where they are used by the
4 parties in a technical or other special sense." Haynes, 32 Cal. 4th at 1204 (quoting AIU
5 Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822 (1990)).

6 Here, Defendants contend that a potential for coverage exists because the
7 Underlying Actions contain theories of liability that are not related to the tire's status as
8 "used," but stemming from human error. They allege that the accident was also caused
9 by USTW's negligence in (1) placing the tires on Tate's Ford Explorer, (2) installing tires
10 that were too old, (3) installing the wrong size tires, and (4) installing the wrong type of
11 tires. Defs.' MSJ, at 14. Thus, they conclude, damages did not arise solely "out of a
12 defect in, or failure of," the used tires. See id. at 18. Because of these alleged multiple
13 causes of the accident, Defendants argue that the concurrent causation doctrine applies,
14 id., which requires insurance coverage when liability is "caused jointly by an insured risk
15 and by an excluded risk," State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d. 94, 102
16 (1973) (in bank).

17 As a necessary predicate for this argument, Defendants contend that the Used
18 Tire Exclusion only applies to risks inherent in a tire's status as used. Defs.' MSJ, at 17
19 ("[Defendants] believe that the Used Tire Exclusion should not apply even to the alleged
20 manufacturing defects in the tires."). Thus, they argue, the concurrent causation
21 doctrine applies—the accident was caused independently by the tire's negligent
22 installation and by the tire's status as used. Id. at 17–18. But this interpretation is belied
23 by the plain language of the Exclusion itself, and, as noted earlier, an insurance
24 contract's plain language controls. The Exclusion precludes liability not only for
25 "defect[s] in" used tires, but also more broadly for "failure[s] of" used tires.

26 Framing the Exclusion in this way, it becomes clear that the joint causation
27 doctrine is inapplicable. Any possible negligence on the part of USTW is intrinsically
28 linked to the tire's failure, and therefore falls within the Exclusion. In Partridge, the

California Supreme Court clarified that the concurrent causation doctrine requires the insured cause to be not causally related to the uninsured cause. See 10 Cal. 3d at 104 n.10 (finding the concurrent causation doctrine applicable to an injury when careless driving caused a modified firearm to discharge because "the filing of the trigger did not 'cause' the careless driving, nor vice versa."). Here, any of the alleged negligence could only have caused the accident to occur by first causing the tire to fail. And, because the Used Tire Exclusion is not limited to injuries caused by a tire's status as used, the fact that the accident's immediate cause was the tire's failure brings Defendants' injuries within the Used Tire Exclusions exemption for liability "arising out of a . . . failure of" a used tire.

Therefore, there is no possibility that Defendants' injuries are covered by USTW's insurance policy, and Praetorian has no duty to defend USTW in the Underlying Actions.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 46 is GRANTED, and Defendants' Motion for Summary Judgment, ECF No. 48, is DENIED. The matter having now been concluded in its entirety, the Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: January 13, 2017

*[signature]*

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE